Monadnock Display Fireworks, Inc. *vs.* Town of
Andover.

Essex.  October 7, 1982. — February 11, 1983.

Present: Hennessey, C.J., Wilkins, Liacos, Nolan, & O'Connor, JJ.

*Contract,* With municipality, Indemnity. *Indemnity. Municipal Corporations,* Contracts, Governmental immunity. *Governmental Immunity.*

Although the doctrine of sovereign immunity would have barred a claim
against a town by a boy injured through an explosion following a fireworks display, the doctrine did not bar a claim for indemnity against
the town by the corporation which had presented the fireworks display
and which had made payment in settlement of the boy's personal injury claims where, under a contract between the corporation and the
town, the town had agreed to provide necessary police and fire protection during and after the display and the town had failed to do so.
[156]

Civil action commenced in the Superior Court on August 23, 1976.

The case was tried before *Linscott,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*John P. Ryan* for the plaintiff.

*Alfred L. Daniels,* Town Counsel, for the defendant.

O'Connor, J.  The plaintiff, Monadnock Display Fireworks, Inc. (Monadnock), appeals from a judgment for the
defendant, the town of Andover, which was based on the
doctrine of sovereign immunity.  We hold that sovereign
immunity is not a defense to Monadnock's claim for indemnity grounded on breach of contract, and we reverse the
judgment.

The original complaint alleged a right of contribution
toward a payment of $66,000 made by Monadnock to Rob-

ert DePierre in settlement of an earlier action commenced by DePierre, through his father, against Monadnock, Andover, and others. The earlier action had been brought to recover for personal injuries suffered by DePierre when he detonated a fireworks device which came into his possession following a fireworks display performed by Monadnock for Andover. After filing its original complaint, Monadnock amended the complaint by adding a claim for indemnity based on contract. The amended complaint alleged a written contract between Monadnock and Andover, dated April 6, 1973. The contract, admitted in evidence at trial, provided that Monadnock would present a display of fireworks on July 4, 1973, and that Andover would "furnish a suitable place to display the said fireworks, and . . . furnish necessary police, fire and sponsors protection, for proper crowd control, auto parking . . . and proper supervision in clearing the area of debris after the Display." The contract was executed on behalf of Andover by its town manager. He was authorized by Andover's charter to execute contracts on behalf of the town, and was authorized by the town meeting to execute this particular contract. On July 4, the display was presented by John Duval on behalf of Monadnock. A crowd in excess of ten thousand people was present. Immediately after the display, hundreds of children rushed to Duval's truck, which contained explosive devices. The children were throwing firecrackers in the area of the truck. No police had been detailed to stay with the truck either during or after the display. Duval was attempting to search the area for unexploded devices after the display, but the police and fire departments provided him with no protection. Because Duval feared the prospect of an explosion or theft at the truck, he abandoned his search for unexploded devices and went to guard the truck. He stayed after the display for about an hour, and received no assistance from police or fire personnel.

There was further evidence that following the display Robert DePierre, then fourteen years old, walked onto the display area in search of display remnants. He found a card-

board cylinder that he assumed would produce colors similar to those he had seen earlier. Later that evening DePierre dumped some powder out of the cylinder and lit it. He then shook more powder from the device onto the flame and the device exploded, causing DePierre to lose his right, major hand. An action was commenced on DePierre's behalf against Duval, Monadnock, Henry L. Hilton, who was Andover's fire chief, and Andover. Monadnock negotiated and paid a $66,000 settlement and obtained a release of all defendants.

In the instant action, the judge submitted four questions to the jury, pursuant to Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974). The questions and the jury's answers were as follows:

"[1.] Was the Town of Andover negligent in the performance or failure to perform its obligations under the contract with Monadnock?" Answer: "Yes."

"[2.] Was the Town's negligence, if any, a proximate cause of the injury to Robert DePierre?" Answer: "Yes."

"[3.] Was Monadnock negligent in its performance of the fireworks display?" Answer: "No."

"[4.] Was Monadnock's negligence, if any, a proximate cause of the injury to Robert DePierre?" Answer: "No." The jury were not asked whether the settlement of DePierre's claim by Monadnock was fair and reasonable, and neither party demanded submission of that question to the jury. However, the judge made a finding on this issue, as he was permitted to do by Mass. R. Civ. P. 49. He found that the $66,000 settlement was fair and reasonable.

DePierre's injuries occurred on July 4, 1973. Any claim by DePierre against Andover is therefore barred by the common law doctrine of sovereign immunity. *Vaughan* v. *Commonwealth*, 377 Mass. 914, 915 (1979). *Whitney* v. *Worcester*, 373 Mass. 208 (1977). General Laws c. 258, as appearing in St. 1978, c. 512, § 15, the Massachusetts Tort Claims Act, does not apply to causes of action arising before August 16, 1977. St. 1978, c. 512, § 16. Monadnock now concedes that, because Andover could not be liable to De-

Pierre in tort for negligence, Andover cannot be liable to Monadnock for contribution as a joint tortfeasor pursuant to G. L. c. 231B. See *Liberty Mut. Ins. Co.* v. *Westerlind,* 374 Mass. 524 (1978); *O'Mara* v. *H.P. Hood & Sons,* 359 Mass. 235 (1971). However, freedom from tort liability does not prevent liability for contractual indemnity, *Whittle* v. *Pagani Bros. Constr. Co.,* 383 Mass. 796 (1981) (defendant claiming express contractual indemnity may implead the plaintiff's employer despite provisions of G. L. c. 152, § 23, releasing the employer from tort claims of the employee). Monadnock relies in this court only on its contractual indemnity claim.

We agree with Andover that for a town to be bound by a contract made on its behalf there must be underlying authority in the town to make the contract and the contract must be made by the town's authorized agent. *Lord* v. *Winchester,* 355 Mass. 788, 789 (1969). *Lowell* v. *Massachusetts Bonding & Ins. Co.,* 313 Mass. 257, 272 (1943). Andover's only challenge to the authority of the town or its agent to enter into the contract with Monadnock, unsupported by citation of authority, is that "it may not contract away . . . sovereign immunity." The doctrine of sovereign immunity, as in effect prior to the Massachusetts Tort Claims Act, was that a municipality was immune from liability for certain *tortious* acts, *Whitney* v. *Worcester,* 373 Mass. 208 (1977), which are breaches of duty arising *by operation of law, Scandura* v. *Trombly Motor Coach Serv., Inc.,* 370 Mass. 612, 618 (1976), rather than *by operation of contract.* The effect of the contract in question is not the relinquishment by Andover of a defense to an action asserting breach of a duty imposed by law. The defense of sovereign immunity from liability to DePierre and members of the public was left in place by the contract. Apart from the contract, Andover owed no duty to Monadnock to supervise clearing of the fireworks area after the display, for breach of which sovereign immunity would have afforded a defense. By the contract, the parties simply created a duty that did not otherwise exist, and, since that duty was imposed by

contract, and not by law, breach of the duty was not tortious, and recovery is not barred by the doctrine of sovereign immunity.

The interpretation of an unambiguous written document is a matter of law for the court. *Great Atlantic & Pac. Tea Co.* v. *Yanofsky*, 380 Mass. 326, 334 (1980). *Sands* v. *Arruda*, 359 Mass. 591, 595 (1971). *Tri-City Concrete Co.* v. *A.L.A. Constr. Co.*, 343 Mass. 425, 427 (1962). It is clear, and we rule that, by its contract with Monadnock, Andover assumed a duty to Monadnock to employ reasonable measures to control the crowd attending the fireworks display, not only while it was being presented, but thereafter, in order that fallout from the display might be cleared away. That this contractual duty was violated was established by the jury's affirmative answer to the question put to them concerning Andover's negligence. That this breach caused DePierre's injury, entitling Monadnock to damages, was also established by the jury.

"The fundamental principle of law upon which damages for breach of contract are assessed is that the injured party shall be placed in the same position he would have been in, if the contract had been performed, so far as loss can be ascertained to have followed as a natural consequence and to have been within the contemplation of the parties as reasonable men as a probable result of the breach, and so far as compensation therefor in money can be computed by rational methods upon a firm basis of facts." *John Hetherington & Sons* v. *William Firth Co.*, 210 Mass. 8, 21 (1911). *Abrams* v. *Reynolds Metals Co.*, 340 Mass. 704, 708-709 (1960). Monadnock was "injured" by virtue of being reasonably obliged to settle DePierre's claim for personal injury which was caused by Andover's failure to meet its contractual obligations. *Great Atlantic & Pac. Tea Co.* v. *Yanofsky*, *supra* at 331-332. The settlement was found to be reasonable[1] and it was a natural consequence of Andover's breach.

---

[1] In view of this finding of the judge, see Mass. R. Civ. P. 49, 365 Mass. 812 (1974), no question arises (nor is it raised by Andover) whether Monadnock gave Andover an opportunity to defend DePierre's action against

That this was within the contemplation of the contracting parties is evident from there being little, if any, benefit to Monadnock from Andover's undertaking to furnish crowd control and supervision in clearing the area of debris, except prevention of the very kind of loss that Monadnock incurred. Since the contract did not require Monadnock to clear the area of debris, Monadnock's primary interest in contracting with Andover for supervision of the clearing was the prevention of personal injuries and the attendant liability that might result from unexploded devices remaining in the area. Accordingly, Monadnock is entitled to recover the $66,000, which the parties agree it paid as a result of its settlement with DePierre.[2] Our rationale produces the same result reached in *Great Atlantic & Pac. Tea Co.* v. *Yanofsky, supra.* In that case, we held that an agreement to indemnify a lessee for payment made in settlement of a claim for personal injuries resulting from a lessor's failure to repair the leased premises will be implied as a matter of law from the lessor's express agreement to repair. *Id.* at 331-332, 334.

The judgment is reversed, and we remand the case to the Superior Court for the entry of judgment for the plaintiff in the amount of $66,000, with interest and costs.

*So ordered.*

---

Monadnock. An indemnitee must give an indemnitor notice and an opportunity to defend the underlying action if the indemnitor is to be precluded from claiming that judgment against the indemnitee could have been avoided or that the settlement was unreasonable, *Trustees of N.Y., N.H. & H.R.R.* v. *Tileston & Hollingsworth Co.,* 345 Mass. 727, 732 (1963), but here reasonableness of the settlement was established by the judge's finding and is not contested.

[2] The plaintiff's claim for indemnity is not barred by the statute of limitations. This action was commenced on August 23, 1976. The claim for indemnity was asserted by an amendment to the complaint that was allowed on May 11, 1981. The amendment relates back to the date of the commencement of the action. Mass. R. Civ. P. 15 (c), 365 Mass. 761 (1974). The alleged breach of contract occurred on July 4, 1973, within the six years allowed for the commencement of contract actions. G. L. c. 260, § 2.