GEORGE SANKER, administrator, *vs.* TOWN OF ORLEANS.

No. 88-P-456.

Barnstable. April 13, 1989. — June 1, 1989.

Present: BROWN, KAPLAN, & FINE, JJ.

*Massachusetts Tort Claims Act. Municipal Corporations*, Liability for tort. *Way*, Public: defect. *Governmental Immunity. Negligence*, Municipality, Design, Duty to prevent harm.

In an action against a town which arose from the death of the plaintiff's decedent who, while riding a motorcycle, struck his head on a branch of a tree overhanging a public road, causing him to lose control of the motorcycle and strike a utility pole, and which was based on the town's alleged negligence in the design of the road, the location of the utility pole, and the presence, unpruned, of the overhanging tree branch, it was error to allow the town's motion for summary judgment where, although the judge correctly concluded that, in locating utility poles, the town was carrying out a discretionary function (as could be said for the process of designing the road), the town's day-to-day maintenance of its public roads, including the alleged failure to prune the overhanging branch, was not a discretionary function within the exemption contained in G. L. c. 258, § 10(*b*), from liability under the Massachusetts Tort Claims Act; where the record established no other cause for the decedent's death but the town's alleged negligence; and where the town owed a duty of care to travelers on the road in question. [411-414]

CIVIL ACTION commenced in the Superior Court Department on May 9, 1984.

The case was heard by *Elizabeth J. Dolan*, J., on a motion for summary judgment.

*Marc S. Alpert* for the plaintiff.

*George E. Clancy* for the defendant.

KAPLAN, J. George Sanker, administrator of the estate of Robert Ambrose, sued the town of Orleans, claiming damages for the death of his decedent allegedly caused by the town's

negligence.[1] On the town's motion for summary judgment, the facts (which should be viewed with the usual indulgence toward the respondent on such a motion) are taken to be that on the afternoon of May 13, 1981, Ambrose was riding his motorcycle home from work down Rock Harbor Road in Orleans; rounding a curve, and looking back over his shoulder, he struck his head upon the branch of a tree overhanging the road; this caused him to lose control of the motorcycle, which careened into a utility pole; in consequence, he suffered a fractured skull and multiple internal injuries, from which he died within two hours.[2] The plaintiff charged the town with negligence in the design of the road, the location of the utility pole, and the presence, unpruned, of the overhanging tree branch.[3]

A judge of the Superior Court allowed the summary judgment, elaborating in her memorandum on the proposition that locating or siting such poles was a "discretionary" function of the town. We go a little further afield.

By a development which need not be traced in detail here, the Massachusetts Tort Claims Act, G. L. c. 258, § 2, taken in connection with G. L. c. 229, § 2, the wrongful death statute, provides a remedy, up to a limit of $100,000, for death (apparently not including attendant conscious pain and suffering) caused by negligent maintenance of public roads (see text to note 7, *infra*). The course of statutory interpretation to this conclusion may be followed in the cases: *Gallant* v. *Worcester*, 383 Mass. 707, 712-715 (1981); *Kromhout* v. *Commonwealth*, 398 Mass. 687, 689-692 (1986). Section 10(*b*) of G.L. c. 258, as appearing in St. 1978, c. 512, § 15, excepts from this sweep of potential liability "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public em-

---

[1] The parties agreed that summary judgment for the defendant was appropriate on the counts of the complaint based on other alleged theories of liability.

[2] These were the facts as told in an affidavit by James Brewer, plaintiff's friend, the only witness of the accident.

[3] The specifications of negligence appear from the plaintiff's memoranda submitted in opposition to summary judgment.

ployee, acting within the scope of his office or employment, whether or not the discretion involved is abused." The difficult concept of "discretionary function or duty" was described in *Whitney* v. *Worcester*, 373 Mass. 208, 216-220 (1977), decided before the passage of the legislation: discretionary acts were said to be those which involved "weighing alternatives and making choices with respect to public policy and planning." At 218. More recent attempts at definition appear in *Irwin* v. *Ware*, 392 Mass. 745, 752-754 (1984); *Patrazza* v. *Commonwealth*, 398 Mass. 464, 467-470 (1986); *Cady* v. *Plymouth-Carver Regional School Dist.*, 17 Mass. App. Ct. 211, 213-217 (1983). See also Cervone & Hardy, The Massachusetts Governmental Tort Liability Act and Its Discretionary Function Immunity: An Analysis and a Modest Proposal, 14 Suffolk U.L. Rev. 1251, 1252-1258 (1980). Whatever the exact boundaries of the "discretionary" concept, we agree with the judge that a municipality carries out a discretionary function where, as in the present case, it approves the location of utility poles according to the procedures prescribed by G. L. c. 166, § 22, as amended by St. 1948, c. 550, § 36.[4] The same, we think, holds for the design of public roads, which would readily be recognized as belonging in the "public policy and planning" category. Decisions supporting this view are *Patrazza* v. *Commonwealth*, 398 Mass. at 469-470; *Drivas* v. *Barnett*, 24 Mass. App. Ct. 750, 756-757 (1987). And see G. L. c. 82, §§ 1, 21.

The day to day care and maintenance of a public road seems at the opposite end from policy and planning: the *Whitney* case

---

[4] The statute sets out the procedures by which a company secures approval to locate utility lines. These include public hearing on notice to abutters, followed by action by the board of aldermen or selectmen granting or denying permission.

The plaintiff now suggests that, while locating the poles may be "discretionary," a decision about the materials of which the poles shall consist is not, and here, plaintiff says, there was negligence in the selection of materials which did not yield sufficiently to impact. The point was not adequately raised below or on the present record appendix, and in any event it would likely be held that the statute, c. 166, § 22, covers materials as well as location, and the choice is "discretionary." Indeed the statute says, "in respect to overhead lines [the board of aldermen or selectmen] may also specify the kind of poles . . . which may be used . . . ."

speaks of the "carrying out of previously established policies or plans," 373 Mass. at 218, and municipal negligence in such a respect is not sheltered as a discretionary function. See *Irwin* v. *Ware*, 392 Mass. at 753; *Doherty* v. *Belmont*, 396 Mass. 271, 276-277 (1985).[5] This, we think, is where the alleged failure to prune the overhanging branch properly fits. See *Doherty* at 276. Accordingly, the summary judgment should have been refused, further proceedings being confined to the particular element of claimed negligence.[6]

The town tries to avert the result by invoking a rule that has been applied under the statutes, still in force, which allow recovery, up to $4,000/$5,000, for negligent maintenance of public roads resulting in injuries (including conscious pain and suffering related to death). G. L. c. 81, § 18; c. 84, § 15.[7] By this rule a municipality is held responsible only if its negligence is the sole cause of the injuries. See *Scholl* v. *New England Power Service Co.*, 340 Mass. 267, 271 (1960); *Tomasello* v. *Commonwealth*, 398 Mass. 284, 286 (1986). We think, however, that such an idea should not be imported into the Tort Claims Act, which invokes the principles of private tort law; thus G.L. c. 258, § 2, as amended by St. 1984, c. 279, § 1, describes a liability of public employers "in the same manner and to the same extent as a private individual under like circumstances" (with stated exceptions). Anyway, the facts

---

[5] "[I]f there is a readily ascertainable standard by which the action of the government servant may be measured, whether that standard is written or the product of experience, it is not within the discretionary function exception . . . . It requires no manual, for example, to instruct an installer of street lights in Boston that the wind may blow mightily and that lightposts had better be anchored accordingly." *Cady* v. *Plymouth-Carver Regional Sch. Dist.*, 17 Mass. App. Ct. at 215. A doctor in treating a patient was not engaged in a discretionary function when "governed by the standard of accepted medical practice, an ascertainable guide to proper conduct." *Kelley* v. *Rossi*, 395 Mass. 659, 665 n.6 (1985).

[6] We do not enter upon the elements of proof that will be required to establish the town's negligence in failing to see to the tree branch.

[7] These statutes in effect carve out exceptions to the Tort Claims Act. See the discussion in *Gallant* v. *Worcester*, 383 Mass. at 710-712; *Kromhout* v. *Commonwealth*, 398 Mass. at 691.

as far as developed on summary judgment do not establish that the casualty resulted from aught but the alleged municipal negligence.[8]

Again, the town argues that there was no duty of care owed to this plaintiff because as he rode to his death he was merely a member of the general public in no special relationship to the town. See *Dinsky* v. *Framingham*, 386 Mass. 801, 810 (1982); *Sampson* v. *Lynn*, 405 Mass. 29, 31 (1989). We hold, to the contrary, that such a relationship subsisted between travelers using the Rock Harbor way and the town of Orleans. Cf. *Gallant* v. *Worcester*, 383 Mass. at 715; *Irwin* v. *Ware*, 392 Mass. at 757-758; *Kromhout* v. *Commonwealth*, 398 Mass. at 692; G. L. c. 84, §§ 1, 15. And see Glannon, The Scope of Public Liability Under the Tort Claims Act: Beyond the Public Duty Rule, 67 Mass.L.Rev. 159, 159-161, 167 (1982).

*Judgment reversed.*

---

[8] The plaintiff attempted to use the cited statutes — G.L. c. 81, § 18, and c. 84, § 15 — which have no exception for "discretionary" functions, to support a further contention that the Tort Claims Act should be interpreted in similar fashion in respect to death claims for road injuries. The text of the Act refutes the contention.