FRANK J. CYRAN & another[1] vs. TOWN OF WARE.

Hampshire. January 9, 1992. - August 19, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Massachusetts Tort Claims Act. Municipal Corporations*, Liability for tort, Duty to prevent harm, Governmental immunity. *Actionable Tort. Governmental Immunity. Fire Fighter*, Municipality's liability. *Negligence*, Municipal employee, Fire.

On appeal from a judgment dismissing pursuant to Mass. R. Civ. P. 12 (b) (6) a claim by property owners who sought damages under the Massachusetts Tort Claims Act, G. L. c. 258, for the alleged gross negligence of the defendant town's firefighters in responding to and fighting a fire in the plaintiffs' residential building, five Justices joined in affirming the judgment on the ground that the case fell within the public duty rule. [455-456]

GREANEY, J., with whom LIACOS, C.J., joined, adhered to the principles articulated in *Irwin* v. *Ware*, 392 Mass. 745 (1984), and *A.L.* v. *Commonwealth*, 402 Mass. 234 (1988), imposing liability on a public entity for foreseeable harm to a discrete, limited, identifiable class of victims distinct from the public as a whole, but, applying these principles, concluded that the plaintiffs had not stated a claim on which relief could be granted. [457-460]

O'CONNOR, J., concurring, with whom NOLAN & LYNCH, JJ., joined, would overrule *Irwin* v. *Ware, supra*, and *A.L.* v. *Commonwealth, supra*, and would adopt as the law of the Commonwealth the traditional public duty rule with exceptions only (a) where a public employee's duties are designed to benefit a specifically identified group and (b) where a "special relationship" exists between certain individuals and a public agency or employee. [460-469]

WILKINS, J., dissenting, with whom ABRAMS, J., joined, adhered to the principles articulated in *Irwin* v. *Ware, supra*, and *A.L.* v. *Commonwealth, supra*, and, applying these principles, was of the view that the plaintiffs had stated a claim for relief under § 2 of G. L. c. 258, the Massachusetts Tort Claims Act. [469-472]

[1]Elizabeth Cyran.

CIVIL ACTION commenced in the Superior Court Department on November 8, 1990.

The case was heard by *John F. Moriarty*, J., on a motion to dismiss.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*James F. Ewen* (*Alan D. Sisitsky* with him) for the plaintiffs.

*Thomas J. Curley, Jr.*, for the defendant.

GREANEY, J. By their amended complaint filed in the Superior Court, the plaintiffs sought damages from the defendant, the town of Ware, under the Massachusetts Tort Claims Act, G. L. c. 258, § 2 (1990 ed.), for the alleged gross negligence of the town's firefighters. The amended complaint states the following. On July 15, 1989, a fire broke out in a two-family wood frame residential building owned by the plaintiffs at 35 South Street in Ware. The Ware fire department was called; its firefighters responded and fought the fire, but they did so "grossly negligently, unskillfully and carelessly . . . [and] failed to attenuate the patent and obvious risk of an immediate and foreseeable physical injury to the property." As a result, the plaintiffs "suffered great loss and damage to [their] real and personal property." Ware filed a motion to dismiss the complaint pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). A judge of the Superior Court allowed the motion.[2] The plaintiffs appealed from the ensuing judgment, and we transferred the case to this court on our own initiative.

In a memorandum and order filed in connection with his allowance of the motion to dismiss, the judge stated: "I agree with the defendant that [the plaintiffs' case is] governed by the decision of the Supreme Judicial Court in *Appleton* v. *Hudson*, 397 Mass. 812 (1986). The obligation to provide

---

[2]No issue was raised as to the plaintiffs' compliance with the presentment requirement imposed by G. L. c. 258, § 4 (1990 ed.). The plaintiffs have included the presentment letter in the appendix. The letter was not part of the complaint and not before the judge, so we consider the case, as did the judge, solely on the allegations stated on the face of the complaint.

adequate fire protection in a town, like the obligation to provide adequate police protection in a neighborhood, is precisely the type of general duty which the 'public duty' rule protects. (*Id.* at 816)." The Chief Justice, Justices Nolan, Lynch, O'Connor, and the author of this opinion agree with this ruling and affirm the judgment.

To have a claim, "the plaintiff[s] must show that the [town's fire department] owed [them] a special duty of care beyond the duty owed to the public at large. *Nickerson* v. *Commonwealth*, [397 Mass.] 476, 478 (1986). *Ribeiro* v. *Granby*, 395 Mass. 608, 613 (1985). *Dinsky* v. *Framingham*, 386 Mass. 801, 810 (1982)." *Appleton* v. *Hudson*, *supra* at 815. The alleged presence of negligence is not enough. In this area, "[n]egligence in a vacuum, as it were, is not actionable because it implicates no [special] duty to . . . person[s] such as the plaintiff[s]." *Nickerson* v. *Commonwealth*, *supra* at 478. In the absence of such a duty, a governmental entity is protected by the public duty rule. That rule is based on the principle "that the employment duties of public employees are generally owed only to the public as a whole and not to private individuals," *Onofrio* v. *Department of Mental Health*, 408 Mass. 605, 609 (1990), *S.C.*, 411 Mass. 657 (1992), and, consequently, the discharge of such duties will not give rise to a private cause of action. We have applied the public duty rule to bar governmental liability unless the statutes or contracts governing the public employee's duties justifiably allow the conclusion that a special duty was owed. See, e.g., *Appleton* v. *Hudson*, *supra*; *Nickerson* v. *Commonwealth*, *supra*; *Ribeiro* v. *Granby*, *supra*; *Dinsky* v. *Framingham*, *supra*. In two cases, *Irwin* v. *Ware*, 392 Mass. 745 (1984), and *A.L.* v. *Commonwealth*, 402 Mass. 234 (1988), about which more will be said later, there existed circumstances giving rise to a special relationship which created a special duty on the part of the public employees to enforce the law and prevent the harmful activity of third persons. Whether a special duty exists presents a question of law, *Monadnock Display Fireworks, Inc.* v. *Andover*, 388 Mass. 153, 156 (1983), which necessitates examination of

the facts in light of existing social values and customs and appropriate public policy. *Schofield* v. *Merrill*, 386 Mass. 244, 246-247 (1982).

This case falls within the public duty rule. "As a general rule no liability attaches for failure to use due care in carrying out general governmental functions such as police or fire protection . . . because the duty of due care is owed to the general public and not to any specific individual . . . ." *Dinsky* v. *Framingham*, *supra* at 807, quoting *Tuffley* v. *Syracuse*, 82 A.D.2d 110, 114 (N.Y. 1981). The fire at the plaintiffs' building was brought about by conditions in which no employee of the Ware fire department played a role. The Ware firefighters only responded to a situation which had not been created by them. No statute has been cited which could be logically construed to impose on the Ware fire department a duty to protect the plaintiffs' building in a different way from the buildings of others. No assurances are alleged to have been given to the plaintiffs that would support a reasonable belief that they would receive flawless firefighting or greater fire protection than that afforded to Ware's inhabitants as a whole. Society would not favor, and public policy does not support, a rule which would expose a municipality to liability for damages every time its fire department does not, in a plaintiff's view, fight a fire satisfactorily. In busy urban areas such exposure could be limitless, and in extreme circumstances (as recent events in Los Angeles illustrate), the potential cost of such governmental liability could be catastrophic.

The duty of Ware's firefighters was, in substance, a general duty of fire protection owed equally to all the town's residents. That duty encompassed only an obligation on the part of the firefighters to respond to the fire at the plaintiffs' building and to deal with it as resources and training permitted and advised. Thus, if the negligence of the firefighters contributed at all to the plaintiffs' damages, it did so only indirectly, by reason of the firefighters' failure adequately to perform under their contracts of employment. In the circumstances, G. L. c. 258 does not provide a basis for liability on

the part of Ware.[3] See *Appleton* v. *Hudson, supra* at 816. See also *Steitz* v. *Beacon,* 295 N.Y. 51, 54-55 (1945) (municipality not liable under language of New York Court of Claims Act, similar to G. L. c. 258, § 2, to protect property from destruction by a fire which was started by another); *LaDuca* v. *Amherst,* 53 A.D.2d 1011, 1011 (N.Y. 1976) ("General allegations of negligent conduct at the scene of [a] fire are insufficient to sustain a cause of action . . . against a municipality"). Cf. *Reynolds Boat Co.* v. *Haverhill,* 357 Mass. 668 (1970).[4]

---

[3]The allegation in the plaintiffs' complaint that the firefighters committed gross negligence does not change this conclusion. There is no reference in G. L. c. 258, § 2, to gross negligence as a basis for liability. A public duty rule which excludes liability for ordinary negligence also must logically exclude it for gross negligence. Were the rule otherwise, every complaint involving negligence in fire protection would allege gross negligence, to avoid dismissal, a situation which would, in effect, swallow the rule and encourage unpredictable results based on reactions by fact finders to which side of "the fuzzy line separating gross from simple negligence" given conduct might fall. See Note, Police Liability for Negligent Failure to Prevent Crime, 94 Harv. L. Rev. 821, 837 (1981).

This case differs from *Harry Stoller & Co.* v. *Lowell,* 412 Mass. 139 (1992), where we reinstated a judgment under G. L. c. 258 on a jury verdict finding a municipality liable for negligence in firefighting. As noted, *id.* at 140, "[t]he city does not argue that it owed no duty to the plaintiff or that the evidence did not warrant a finding that the city negligently violated that duty." The *Stoller* opinion was decided on the question whether the conduct of Lowell's firefighters invoked the discretionary function exception provided for by G. L. c. 258, § 10 (*b*) (1990 ed.). This case turns on the question conceded by Lowell in *Stoller.*

[4]Justices Wilkins and Abrams would conclude that a duty exists for the reasons expressed in their dissent. *Post* at 469. We disagree with their approach, which attempts to draw an analogy with a private company engaged to fight fires.

Our public duty rule simply recognizes that many functions performed by government are not typically performed by private parties. For those functions, there either are no analogues in private sector law or, at best, only imperfect analogues. For this reason, hypothesizing a private function to determine whether a public function creates liability provides a test which is convenient but basically unsound because the test is built on the specious premise of a private function which does not realistically exist. In such cases, no duty to an individual plaintiff properly can be found under § 2 of G. L. c. 258 because to find such a duty could impose on the government potentially all-encompassing liability to which no other entity is fairly held subject. The essence of the public duty rule is that a plaintiff

What has been said disposes of the appeal. Justices Nolan, Lynch and O'Connor wish to go further and maintain that the case presents an appropriate occasion in which to overrule *Irwin* v. *Ware, supra,* and *A.L.* v. *Commonwealth, supra,* decisions with which they have been dissatisfied. The Chief Justice, Justices Wilkins and Abrams, and the author of this opinion do not agree.

General Laws c. 258, § 2, provides, in pertinent part, that a public employer can be liable for damages "caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances." We have found liability under this standard when the conduct of the public employee is the same as, or similar to, conduct which, in the case of a private tortfeasor, would violate a common law or statutory duty of care. See, e.g., *Mamulski* v. *Easthampton,* 410 Mass. 28 (1991) (wrongful death; town's responsibility similar to the duty owed at common law by landowner and to municipal liability for death due to defect in highway); *Onofrio* v. *Department of Mental Health,* 408 Mass. 605, 610 (1990) (liability based on the defendant's direct act of placing a dangerous person in the plaintiff's home, and thus "grounded in the general rule that one who takes action ordinarily owes to ev-

---

harmed by government action is required to show that he or she had a demonstrable right to expect protection different from, and more extensive than, the protection owed to the public at large. "[F]airness to the injured individual cannot be the sole controlling factor in this context. Desirable as it might be to structure a system of cost-benefit distribution in which no tortious injuries would go uncompensated, the fact that we are here dealing with governmental entities vastly complicates the issue of the appropriate scope of tort liability . . . An appropriate balance should be struck between the public interest in fairness to injured persons and in promoting effective government." *Whitney* v. *Worcester,* 373 Mass. 208, 215-216 (1977). Requiring a plaintiff to show the existence of a special duty strikes the needed balance consistent with what society expects.

Justices Wilkins and Abrams maintain that we have incorrectly applied the principles in *Irwin* v. *Ware,* 392 Mass. 745 (1984), and *A.L.* v. *Commonwealth,* 402 Mass. 234 (1988), although they join in concluding that those decisions shall not be overruled.

eryone else who may be affected thereby a duty to act reasonably"). See also *Doherty* v. *Belmont*, 396 Mass. 271, 273 (1985); *Sanker* v. *Orleans*, 27 Mass. App. Ct. 410, 413-414 (1989). As previously discussed, we have otherwise not found liability in the absence of a basis to conclude that an individual plaintiff was owed a special duty of care not owed the public at large.

A plaintiff can show the existence of a special duty by relying on a public employee's violation of a statute which expresses a legislative intent to permit suit by a private individual in that plaintiff's circumstances, see *Dinsky* v. *Framingham*, *supra* at 809, or by showing that the plaintiff has reasonably relied to his or her harm on assurances of care given by a public employee. See, e.g., *DeLong* v. *County of Erie*, 89 A.D.2d 376 (N.Y. 1982), aff'd, 60 N.Y.2d 296 (1983). These bases for suit, however, are not necessarily exclusive.

In *Irwin* v. *Ware*, *supra*, we concluded that the defendant's police officers had acted in violation of their responsibilities by failing to remove an intoxicated driver from a public highway. Important to the decision were several statutes that established a police officer's obligations in the circumstances. These statutes could fairly be construed as evincing a legislative intent to protect private individuals like the plaintiffs in *Irwin* from the harm posed by the intoxicated driver.[5] *Id.* at 762. We explained the basis for the *Irwin* decision in *Appleton* v. *Hudson*, *supra* at 816, as follows:

> "As we stated [in *Irwin supra* at 756, 762], and reiterated in both *Ribeiro* [v. *Granby*, 395 Mass. 608 (1985)], and *Nickerson* [v. *Commonwealth*, 397 Mass. 476 (1986)], our conclusion that a special duty existed was based on the 'legislative intent [expressed in the statutes] to protect both intoxicated persons and other users of the highway,' . . . *and* on 'the risk created by

---

[5]See G. L. c. 41, § 98 (1990 ed.); G. L. c. 90, § 21 (1990 ed.); G. L. c. 90, § 24 (1) (*a*) (1) (1990 ed.); G. L. c. 90, § 24 (1) (*f*) (1990 ed.); G. L. c. 90C, § 2 (1990 ed.); G. L. c. 111B, § 8 (1990 ed.).

the negligence of a municipal employee . . . of immediate and foreseeable physical injury to persons who cannot reasonably protect themselves from it."

In *A.L.* v. *Commonwealth, supra,* we determined that the express and specific terms of a probation agreement imposed by a judge which prohibited a probationer (a convicted child molester) from working with children created a special relationship between children molested by the probationer and the probation officer who had failed to enforce the agreement. The terms of the agreement created a duty to the plaintiffs beyond that owed to the public as a whole.[6] *Id.* at 241. In addition to the elements of foreseeability and the existence of a discrete, limited, and identified class of victims, the *Irwin* and *A.L.* decisions turned on the existence of statutes and a precise agreement which created a fair basis for finding a special duty because in each case the public employees had control over specific dangerous persons who posed a discernible threat to certain potential victims. Although the concurrence by Justice O'Connor, with whom Justices Nolan and Lynch join, attempts to draw comparisons between this case and the *Irwin* and the *A.L.* decisions, it does not adequately recognize that there is nothing here comparable to the statutes and the special agreement which were at the core of those decisions and which were critical, on the facts of those cases, to their outcome.

Once these points are understood, it becomes clear that *Irwin* and *A.L.* have their place in a plan of evolving law. The approach taken thus far to the application of G. L. c. 258 has been designed to further the perceived legislative purpose of the statute — on the one hand, avoiding unlimited expo-

---

[6] Justice O'Connor maintains that the *Irwin* and *A.L.* decisions did not rest on the grounds discussed above. *Post* at 463-465. The passage from *Appleton* v. *Hudson, supra,* speaks for itself as to *Irwin.* As to *A.L.,* attention is directed to where the court says: "We think that the conditions of probation imposed by the sentencing judge created a special relationship between these plaintiffs and the probation officer and created a duty beyond that owed to the public as a whole." *Id.* at 241.

sure to liability on the part of public entities which could make them virtual insurers for all wrongs in which their employees may be involved and, on the other hand, holding public entities responsible for damages either when the wrongful conduct of their employees directly causes harm or when a special relationship exists which would require a public employee to protect an identified plaintiff from the foreseeable harmful acts of a third person. That difficult cases may arise under G. L. c. 258 from time to time should not cause a retreat to an overly restrictive public duty rule which may undermine the statute by restoring for all practical purposes, and contrary to the Legislature's intent, a form of broad-based sovereign immunity. The evolution of the law of negligence has always required courts to make hard (and often fine) distinctions, and to assess and determine, in considering the existence of a duty, contemporary attitudes and public policy. General Laws c. 258 does not admit of application with algebraic precision, and it should not be applied with an inflexibility that was not intended. *Irwin* and *A.L.* constitute precedents that are consistent with present social conditions and public policy.

*Judgment affirmed.*

O'CONNOR, J., (concurring, with whom Nolan and Lynch, JJ., join). I agree with the Chief Justice, and Justices Nolan, Lynch, and Greaney, that Ware's motion to dismiss the complaint was properly allowed, and that the resulting judgment for the defendant should be affirmed. Furthermore, I agree with Justices Wilkins, Abrams, Nolan, and Lynch that that result is incompatible with *Irwin* v. *Ware*, 392 Mass. 745 (1984), and *A.L.* v. *Commonwealth*, 402 Mass. 234 (1988). Accordingly, in the interest of predictability of the law, fairness to litigants, and judicial efficiency, I would expressly overrule *Irwin* and *A.L.*, and would declare that the traditional public duty rule, including its exceptions, is the law of this Commonwealth.

"Negligence, without qualification and in its ordinary sense, is the failure of a responsible person, either by omission or by action, to exercise that degree of care, vigilance and forethought which, *in the discharge of the duty then resting on him,* the person of ordinary caution and prudence ought to exercise under the particular circumstances. It is a want of diligence *commensurate with the requirement of the duty* at the moment *imposed by the law*" (emphasis added). *Altman* v. *Aronson,* 231 Mass. 588, 591 (1919). In the absence of a duty to be careful, even carelessness which results in harm to another is not "negligence" in the legal sense and is not grounds for liability. *Theriault* v. *Pierce,* 307 Mass. 532, 533 (1940). Thus, the question in this case is not whether the alleged "negligence" of the Ware firefighters is actionable. If their conduct was "negligent," it is actionable. The question is whether their alleged carelessness constituted negligence. The two words are not synonymous. The answer to the question whether the firefighters' alleged carelessness constituted negligence (or gross negligence) depends on whether the firefighters owed a duty to the individual plaintiffs to exercise reasonable care in extinguishing the fire in the plaintiffs' building — a fire that the firefighters did not originate. Only if the firefighters owed such a duty could Ware be liable in this action.

Whether, in particular circumstances, a duty is owed is a question of law, *Monadnock Display Fireworks, Inc.* v. *Andover,* 388 Mass. 153, 156 (1983), and the answer should reflect existing social values and customs and appropriate public policy. *Schofield* v. *Merrill,* 386 Mass. 244, 246-251 (1982). Those concerns require the holding in this case that, although the Ware firefighters owed the general public as a whole a duty based on their employment contracts to exercise reasonable care in extinguishing the fire in the plaintiffs' building, they did not owe a similar duty, imposed by law, to the individual plaintiffs. Therefore, I agree with the court that the plaintiffs' complaint "[f]ail[ed] to state a claim upon which relief can be granted." Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974).

The court here and now should announce its acceptance of the traditional public duty rule controlling whether the State, municipalities, or counties are liable for injuries and losses sustained by individuals as a result of a public employee's failure to act, as required by the terms of his or her employment, to prevent or diminish the harmful consequences of a condition or situation not originally caused by the employee. That rule is that the employment duties of public officers and employees ordinarily are owed only to the city, town, county, or State with whom the officers and employees have contracted. Those duties are enforceable only administratively or by criminal proceedings. They are not owed to individuals who may be affected by their nonfulfilment but with whom the employees have not contracted. There are two exceptions. One exception is that, when a statute expressly provides that a public servant's employment duties are designed to benefit a specifically identified group of persons in addition to the general public, the individuals in that group are owed a special duty, violation of which may be actionable. Courts seldom apply that exception. "Despite numerous references to the statutory intent rationale, it is difficult to find cases which hold that a statute creates a special duty to a particular class of persons." Glannon, The Scope of Liability Under the Tort Claims Act: Beyond the Public Duty Rule, 67 Mass. L. Rev. 159, 163 (1982). The other exception to the traditional public duty rule is where a "special relationship" exists between certain individuals and a public agency or employee, such that the public employee's duty to exercise reasonable care to prevent or to minimize harm from conditions not created by the employee runs not only to the general public as a whole, but to those individuals in particular. A common thread running through the cases applying this exception is that the special relationship is found to exist when the public agency, officer, or employee has expressly or impliedly represented to an individual that special care would be taken for his or her protection, such as a police officer's promising an informant special protection, thus justifying that individual's reliance in a special way on the employee's

carrying out of his or her responsibilities. A special relationship for public duty rule purposes is not a creature of statute, but instead is created by conduct of the public agency or employee inducing reliance on the part of the injured person, much in the same way that a contract is created.

The traditional public duty rule, including its two exceptions, fairly reflects current social values and promotes sound public policy. It not only promises reasonably predictable results in cases, such as the present one, involving harm indirectly (secondarily) caused by a public employee's failure to act in response to a situation the employee did not create, but also establishes a reasonable balance between competing values: the compensation of injured individuals and the protection of government from financial burdens of such magnitude as to threaten its ability to function. Surely, if, as Justices Wilkins and Abrams urge, the court were to conclude in this case that municipal firefighters owe individual citizens a duty of careful firefighting, violation of which would result in municipal liability, that holding would have serious, and perhaps overwhelming, ramifications for cities and towns. Would liability insurance be available at an affordable price? If not, government losses through the payment of judgments and settlement agreements could be devastating. Although G. L. c. 258, § 2 (1990 ed.), limits the amount of a public employer's liability for the negligence of its employees to $100,000 per plaintiff, see *Irwin* v. *Ware, supra* at 766-767, there could be a large number of plaintiffs as a result of a single fire. Multiply this by the number of fires a municipality, particularly an urban municipality, must respond to per week, month or year, and the resulting potential liability would be staggering.

This case demonstrates, perhaps more forcefully than any of our earlier cases, the wisdom of the traditional public duty rule, and that *Irwin* v. *Ware, supra,* and *A.L.* v. *Commonwealth, supra,* cases in which the court did not follow that rule, should be expressly overruled. As five of the Justices recognize, those two cases are not fairly distinguishable from this case. In *Irwin,* police officers from the town of Ware

failed to take into custody an intoxicated motorist they had stopped on the highway. Ten minutes later, that motorist's vehicle collided with another vehicle causing deaths and bodily injuries. In a four-to-three decision, the court held that the officers had violated duties owed not only to the general public but specially owed to the crash victims. Justice Greaney states, *ante* at 458, that "[i]mportant to the [*Irwin*] decision were several statutes that established a police officer's obligations in the circumstances. These statutes could fairly be construed as evincing a legislative intent to protect private individuals like the plaintiffs in *Irwin* from the harm posed by the intoxicated driver." The court in *Irwin, supra* at 759, did cite several statutes authorizing police officers, but not obliging them, to arrest intoxicated motorists, to assist them, and to administer breath and blood tests. However, the only reference in *Irwin* to statutes that bear on police officers' obligations is. the following: "Next, there are statutes requiring police officers to act. A police officer must, at least, issue a record upon a citation for each automobile law violation. G. L. c. 90C, § 2. General Laws c. 90, § 24 (1) (*a*) (1), makes driving while intoxicated an automobile law violation. Similarly, 'police officers of all cities and towns . . . shall suppress and prevent all disturbances and disorder' G. L. c. 41, § 98, as amended through St. 1970, c. 181." *Id.* at 759-760. Surely, however, statutes that provide for the issuance of records upon citations for automobile law violations of every kind, of which driving while under the influence of alcohol is only one, and statutes which provide in a general way for the suppression by police officers of disturbances and disorder, do not express a legislative intent to benefit specifically identified individuals in addition to the public as a whole.

Moreover, the relative unimportance of those statutes to the decision in *Irwin* is made manifest by the court's statement, *id.* at 756, that "[w]here the risk created by the negligence of a municipal employee is of immediate and foreseeable physical injury to persons who cannot reasonably protect themselves. from it, a duty of care reasonably should be

found." There is no reference to statutes in that statement. In addition, the same message is delivered by the court, *id.* at 762, when it identifies foreseeability as "the most crucial factor." Therefore, the absence of statutes relating to firefighters does not fairly distinguish this case from *Irwin.* The cases cannot be distinguished on the basis of foreseeability either. Indeed, the risk created by the alleged failures of the firefighters in the present case was not only foreseeable but was immediate, and was one from which the plaintiffs reasonably could not have protected themselves. The fact that *Irwin* involved bodily injury and this case involves property damage is inconsequential. It would make no sense to say that firefighters owe a special duty to persons injured by fire but not to persons whose homes or places of business have been destroyed in the same way. The facts of *Irwin* and of the instant case are too nearly identical for their resolution to be controlled by different duty rules.

Justice Greaney states that "[i]n *A.L.* v. *Commonwealth, supra,* we determined that the express and specific terms of a probation agreement imposed by a judge which prohibited a probationer (a convicted child molester) from working with children created a special relationship between children molested by the probationer and the probation officer who had failed to enforce the agreement." *Ante* at 459. Justice Greaney seems to suggest that the terms of probation in *A.L.,* which he characterizes as an "agreement," were akin to the type of promise by a public agency, officer, or employee that induces reliance by an individual resulting in a "special relationship" and therefore a special duty to that individual under the traditional public duty rule. Nowhere in *A.L.* does the court even refer to an "agreement." In any event, there was no promise in *A.L.* which induced the children's reliance on protection being afforded by the probation officer or anyone else. For that reason, *A.L.* is not distinguishable from the present case because of an agreement in *A.L.* and not in this one.

*A.L.* is not distinguishable from the present case in any other way that would suggest that the result in that case is

compatible with the court's denial of liability in this case. There, the court concluded that a probation officer supervising the probation of a convicted child molester owed a duty not only to the general public but also to two young boys, the plaintiffs in that case, individually, to exercise care in supervising the probationer. The court reasoned that "the conditions of probation imposed by the sentencing judge created a special relationship between [the] plaintiffs and the probation officer," *id.* at 241, because (1) the conditions of probation were designed to protect young boys such as the plaintiffs; (2) it was foreseeable that the probation officer's failure to monitor the nature of the probationer's employment would create a risk of the harm that occurred and that the conditions of probation were designed to prevent; (3) even though nine months had elapsed between the imposition of probation and the molestation of the boys, the threat to the boys was a chronic, persistent, and known threat involving an "identifiable perpetrator"; and (4) the boys could not have reasonably protected themselves nor could their parents have protected them. *Id.* at 241-244. Almost identical factors are present to the same or a greater degree in the case at bar. The employment of the firefighters and their being dispatched to the plaintiffs' building were designed to protect persons such as the plaintiffs; it was foreseeable that incompetence or carelessness on the firefighters' part would create a risk of the harm that occurred; the foreseeable harm was immediate and its source was clearly identifiable; and the plaintiffs could not reasonably have protected themselves from the harm that occurred.

Justice Greaney states that the views I have expressed do not "adequately recognize that there is nothing here comparable to the statutes and the special agreement which were at the core of those decisions and which were critical, on the facts of those cases, to their outcome." *Ante* at 459. He concludes that *Irwin* and *A.L.* "have their place in a plan of evolving law." *Ante* at 459. As I hope I have made clear, the statutes and "agreement" were not critical to *Irwin* or *A.L.*, and there is no significant factual difference between *Irwin* or

*A.L.* and this case. Here the plaintiffs' complaint was properly dismissed, and a similar result should have been reached in *Irwin* and *A.L.* Those cases should now be expressly overruled. "There should be no reluctance to overrule a decision which is wrong [especially a recent decision], either because it was not sound when originally promulgated or because subsequent events prove it to be wrong." *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 554 (1971) (Spiegel, J., dissenting).

Overruling *Irwin* and *A.L.* would in no way "undermine" G. L. c. 258, as Justice Greaney suggests it would, "by restoring for all practical purposes, and contrary to the Legislature's intent, a form of broad-based sovereign immunity." *Ante* at 460. It is important to recognize that the public duty rule applies only to situations like those present in this case and in *Irwin, supra,* and its progeny, in which a plaintiff has been harmed by a condition or situation which was not originally caused by the public employee, and is attributable to the employee only in the sense that the employee failed to prevent or mitigate it. "If, in *Irwin*, the injuries and deaths had been directly caused by the police officer's [careless] driving of a cruiser in the course of his employment, there would have been no call for this court to indulge in an analysis involving the public duty rule and its exceptions. In such a case, the duty owed by the police officer would *not* have been grounded in his employment contract but rather would have been the duty of care that every motorist owes to everyone else on the highway. See generally Glannon, The Scope of Public Liability Under the Tort Claims Act: Beyond the Public Duty Rule, 67 Mass. L. Rev. 159, 166 (1982)." *Onofrio* v. *Department of Mental Health*, 408 Mass. 605, 610 (1990), *S. C.*, 411 Mass. 657 (1992). Thus, the overruling of *Irwin* and *A.L.* would not interfere with the Legislature's decision to abrogate governmental immunity by imposing governmental liability "for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner

and to the same extent as a private individual under like circumstances." G. L. c. 258, § 2. The statute is silent with respect to the circumstances that may give rise to the imposition on a public employee of a duty of reasonable care owed to a private individual except to say that such a duty shall be owed "in the same manner and to the same extent as [by] a private individual under like circumstances." In the absence of special assurances having been given, the law imposes no duty on a private individual carefully to extinguish a fire he did not cause, or carefully to remove from the highway an intoxicated motorist whose intoxication or presence on the highway he did not bring about. By the express provisions of G. L. c. 258, § 2, a public employee is in no different position.

I agree with Justice Wilkins that "[a] literal application of § 2 mandates municipal liability in this case *if* the hypothetical private fire protection company described [in Justice Wilkins's dissent] would be liable" (emphasis added), *post* at 470, but I do not agree that, in the circumstances of this case, the private fire company would have been liable. Justice Wilkins may be satisfied that the private company would have been liable, but he gives no reasons and cites no authority for that proposition. In my view, the firefighters in Justice Wilkins's hypothetical case would have owed no duty to the plaintiffs, imposed as a matter of tort law, to exercise care to extinguish a fire they did not cause. They would have owed a contractual duty to their employer, the private company, and that company would have owed a contractual duty to Ware, but, in the absence of a specific statute or a special relationship similar to that recognized by the traditional public duty rule, the private firefighters would not have owed the *plaintiffs* a duty to use care to correct a situation they did not bring about. Therefore, the private employer would not have been vicariously liable to the plaintiffs, and a holding in this case that the public employer also is not liable does no violence to G. L. c. 258.

It is time for the public duty rule in Massachusetts to be made clear. The result of the court's not overruling *Irwin* and

*A.L.* will be the continued unpredictability of results in cases involving public employees' failure to act in dereliction of their employment duties, and a consequent enormous waste of private and public resources in connection with needless litigation. The court should here and now announce its acceptance of the traditional public duty rule and its intention not to follow any of its earlier contrary decisions.


WILKINS, J. (dissenting, with whom Abrams, J., joins). Let us assume that, consistent with some current thinking, a town hires a private corporation to provide municipal fire protection. One day a house catches on fire; an alarm is struck; the private corporation's employees head for the scene. When the first fire engine arrives, the two firefighters on that truck do nothing, except say that they are waiting the arrival of a second fire engine. In a few minutes, the second engine arrives. The fire has now spread to the rear porch and is burning the outside rear of the house. The firefighters on the second engine attach a hose to a hydrant and spray water on the front of the house, where there is no fire. They ignore the rear of the house, where the fire continues to spread. Another engine arrives, and more hoses are laid out. Water is not applied to the fire until approximately twenty minutes after the arrival of the first fire engine. The fire is extinguished on the rear porch, and the hoses are turned off for the next twenty-seven minutes. The fire has, however, reached the rear peak of the roof inside the house and continues to spread.[1]

Section 2 of G. L. c. 258 (1990 ed.) provides, in part, that a public employer shall be liable for injury to property caused by the negligent act or omission of any public employee, acting within the scope of his or her employment, "in the same manner and to the same extent as a private individ-

---

[1]The assumed facts are facts on which the plaintiffs rely in this case. They appear in the plaintiffs' presentation made to the municipal authorities, and, although not properly part of the record on appeal, these facts fall within the scope of the allegations of the complaint.

ual under like circumstances." A literal application of § 2 mandates municipal liability in this case if the hypothetical private fire protection company described above would be liable.

The Massachusetts Tort Claims Act (G. L. c. 258) is modeled on the Federal Tort Claims Act (28 U.S.C. §§ 2671-2680 [1988]). We appropriately look to the Federal Act for instruction in determining what our Legislature intended by identical words in the State Act. See *Harry Stoller & Co.* v. *Lowell*, 412 Mass. 139, 142-143 (1992). For decades the United States has been subject to liability under the Federal Act for conduct of Federal firefighters that would be negligent conduct if performed by private persons in similar circumstances. *Rayonier Inc.* v. *United States*, 352 U.S. 315, 318 (1957). It does not matter that the private actor is only hypothetical. In creating governmental liability for the negligence of its employees "in the same manner and to the same extent as a private individual under like circumstances" (28 U.S.C. § 2674), Congress intended that "the United States [be] liable to petitioners for the Forest Service's negligence in fighting the forest fire if, as alleged in the complaints, [State] law would impose liability on *private persons or corporations* under similar circumstances" (emphasis supplied). *Rayonier Inc.* v. *United States, supra* at 318. "[T]he very purpose of the Tort Claims Act was to waive the Government's traditional all-encompassing immunity from tort actions and to establish novel and unprecedented governmental liability." *Id.* at 319. The Supreme Court recognized that a heavy burden may be placed on the public treasury and that entire communities might burn. *Id.* This risk was, however, one that Congress elected to assume in the best interests of the nation. *Id.* at 319-320. Spreading the cost of the government's negligence among all taxpayers and relieving the injured party from bearing that cost alone was a judgment that Congress could and did make. *Id.* at 320. When that judgment is made, "[t]here is no justification for this Court to read exemptions into the Act beyond those provided by Congress. If the Act is to be altered that is a func-

tion for the same body that adopted it." *Id.* This court should not "as a self-constituted guardian of the Treasury import immunity back into a statute designed to limit it." *Indian Towing Co.* v. *United States,* 350 U.S. 61, 69 (1955).

What I have said would warrant the conclusion that a judge-made exemption from governmental liability (such as the public duty rule) should not be crafted and that governmental liability should exist, assuming no statutory exception to liability applies, even in a case in which there is no "special relationship" between the plaintiff and the governmental employee charged with negligence. This court has, however, adopted a limitation on governmental liability for cases where no statutory exception applied but where no "special relationship" was found, and I have accepted the concept.[2] The reason for the limitation is a lingering concern that the exposure to liability, even though limited to $100,000 for each plaintiff (G. L. c. 258, § 2), will be more than government treasuries can sustain. In its *Rayonier* opinion, the Supreme Court noted the possible distinction between the Federal government and a local government in this respect, saying that "for obvious reasons the United States cannot be equated with a municipality, which conceivably might be rendered bankrupt if it were subject to liability for the negli-

---

[2]In abandoning the public duty rule in Colorado, the Colorado Supreme Court, in a well-reasoned opinion, noted that "a growing number of courts have concluded that the underlying purposes of the public duty rule are better served by the application of conventional tort principles and the protection afforded by statutes governing sovereign immunity than by a rule that precludes a finding of an actionable duty on the basis of the defendant's status as a public entity." *Leake* v. *Cain,* 720 P.2d 152, 158 (Colo. 1986), citing cases from Alaska, Arizona, Florida, Iowa, New Mexico, Oregon, and Wisconsin. See *Maple* v. *Omaha,* 222 Neb. 293, 301 (1986) ("Nowhere is there found [in the statute] an exemption for the exercise of a duty owed to the public generally"). These opinions cast doubt on whether this court acted wisely in accepting the public duty rule after the enactment of the Massachusetts Tort Claims Act.

Of course, the statutory exemption from liability when the conduct causing harm involves the carrying out of a discretionary (i.e., policymaking or planning) function (G. L. c. 258, § 10 [*b*]) would apply whether or not the public duty rule is involved in a given situation. See *Harry Stoller & Co.* v. *Lowell,* 412 Mass. 139 (1992).

gence of its firemen." *Rayonier Inc.* v. *United States, supra* at 320.

It is for this reason that this court has engaged in "line-drawing," a practice not rare in the development of tort law. We have regarded certain situations as sufficiently egregious, where the peril was obvious and substantial and the class of potential victims was reasonably determinable, to warrant governmental liability. See *A.L.* v. *Commonwealth*, 402 Mass. 234 (1988); *Irwin* v. *Ware*, 392 Mass. 745 (1984). We identified a "special relationship" in those cases, a conclusional phrase that does nothing to assist in drawing the line between liability and nonliability in given cases.

I agree with Justice O'Connor's assessment that there is no meaningful basis for permitting liability in *Irwin* v. *Ware, supra,* and *A.L.* v. *Commonwealth, supra,* and not permitting liability here. See *ante* at 463-466 (O'Connor, J., concurring). In this case, there was direct, obvious, and immediate harm to the house of known property owners. The specificity as to whose interests were affected by the firefighters' negligence is far more apparent than in *A.L.* v. *Commonwealth, supra,* and in *Irwin* v. *Ware, supra,* cases in which the potential plaintiffs were not even ascertainable at the time the acts of negligence were committed and in which injury to the plaintiffs (or anyone else) from the public employee's negligence was not certain. The immediacy and certainty of the harm and the clear identification of the persons being specifically harmed make inapplicable here any judge-made exception to the rule of governmental liability stated in G. L. c. 258, § 2. The threat of governmental financial ruin arising from the damage caused by a destructive conflagration, which so troubles those of my colleagues who deny the possibility of liability here, presents a different case in which line-drawing might reasonably result in no liability.

Judgment should not have been entered for the defendant town.