Brady, J.
Plaintiff Kenneth McConnell (“McConnell”) commenced this action against defendants Thomas Dooling (“Dooling”), Guard Force Management, Inc. (“Guard Force”), and the Quincy Housing Authority (“the Authority”) after he allegedly was assaulted by Dooling in the lobby of his apartment building. McConnell brought five claims against the Authority alleging that the Authority: was responsible for Dooling’s assault and battery (Count VIII); negligently hired Dooling (Count IX); negligently trained Dooling (Count X); negligently supervised Dooling (Count XIII); and negligently used a defective instrumentality (Count XII). The Authority now moves for summary judgment, and the plaintiff opposes the motion. Counts VIII and XII were waived at the hearing. For the reasons discussed below, partial summary judgment is grantedin favor of the defendant on Count XIII, and denied as to Counts IX and X.
BACKGROUND
The record in this case includes the following undisputed facts. In 1993, the Authority entered into a contract with Guard Force to provide security for the Authority’s public housing project located at 73 Bicknell Street, Quincy, Massachusetts. During the *671 relevant time period, Dooling was one of the guards assigned to the Bicknell Street project, and McConnell was a tenant. At the time Dooling was hired, he had an extensive criminal record.
On the evening of January 10, 1994, McConnell observed Dooling wearing his Guard Force uniform, playing cards in the lobby with two other tenants. One of the tenants was Sharon Quinonez (“Quinonez”). Some time after midnight, McConnell, Quinonez and the third tenant left the lobby and returned to their apartments. At some later time, Dooling allegedly unlawfully entered Quinonez’s apartment.[2]
The following day, McConnell saw Quinonez in the lobby and spoke briefly to her. While they were talking, Dooling approached McConnell and struck him in the chest and abdomen, with brass knuckles.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). When appropriate, summary judgment “may be rendered as to certain issues only, leaving other issues to be tried to the jury because they present a genuine issue of fact. ” Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976).
The Authority is immune to actions of negligence except as G.L.c. 258, the Massachusetts Tort Claims Act, has abrogated that immunity. G.L.c. 258, §2 imposes liability on a public employer for the negligence of any public employee acting within the scope of his employment, provided none of the “exclusions” from general liability contained in G.L.c. 258, §10 are applicable. Recent amendments to G.L.c. 258 added several further exclusions, §§10(e)-(j), to those previously provided in §10. Stat. 1993, c. 495, §§57 and 144. The issue raised in this case is whether §100) applies to bar McConnell’s claim.[3]
G.L.c. 258, §100) provides, in pertinent part, that the Massachusetts Tort Claims Act does not apply to:
0) any claim based upon an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer . . .
The Authority contends that Dooling was the “original cause” of McConnell’s injuries, and under §100), the Authority is not liable for any alleged failure on its part to prevent Dooling’s tortious acts.
There is little caselaw to aid the court in defining the meaning of “not originally caused by the public employer or any other person acting on [its] behalf.”[4] This language appears in Justice O’Connor’s concurrence in Cyran v. Ware, 413 Mass. 452 (1992), a decision which predates the recent amendment. Justice O’Connor stated that public employers should not be liable for situations “in which the plaintiff has been harmed by a condition or situation which was not originally caused by the public employee, and is attributable to the employee only in the sense that the employee failed to prevent or mitigate it.” Cyran v. Ware, supra at 467. One legal scholar has asserted that “Justice O’Connor’s statement that there must be something more than the pure failure to alleviate a private harm should be helpful in determining the scope of subsection 0).” Joseph W. Glannon, Liability for “Public Duties” Under the Tort Claims Act: The Legislature Reconsiders the Public Duty Rule, 79 Mass.L.Rev. 17, 26 (1994) (emphasis in original). Professor Glannon argues that §100) “requires some involvement of a public employee in creating the initial injuiy-causing scenario, not simply a failure to respond adequately after it arises.” Id. (Emphasis in original.) This court is persuaded that this approach represents a sensible reading of the §100) exclusion.
In the instant case, McConnell asserts several theories of negligence which must be dealt with separately. His first theory is that the Authority, by not checking Dooling’s criminal record, negligently hired him. This claim is viable now, and also would have been before the 1993 amendments. See Bonnie W. v. Commonwealth, 419 Mass. 122, 126 (1994); Onofrio v. Department of Mental Health, 408 Mass. 605 (1990). A jury could find that the Authority did not simply fail to prevent the assault, but participated in risk-creating conduct which contributed to the situation which caused the harm. See Glannon, supraat 30-31. Ajury could conclude that in hiring Dooling, the Authority was bound to act reasonably, and that it violated that duty to the detriment of McConnell. Bonnie W. v. Commonwealth, supraat 127. Summary judgment is inappropriate as to this claim.
McConnell’s second theory of negligence is that the Authority negligently supervised Dooling, and thereby failed to prevent him from assaulting the plaintiff. This claim is barred by §100). Bonnie W. v. Commonwealth, supra at 126.
Finally, McConnell’s third theory of negligence is that the Authority negligently trained Dooling. As the basis of this claim appears rather vague, this court will leave the determination of this issue for the trial judge.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant Quincy Housing Authority’s motion for summary judgment be allowed in part, and denied in part as follows: Summary judgment is ALLOWED as to Count XIII, and DENIED as to Counts IX and X. Plaintiff having waived Counts VIII and XII, it is further ORDERED that these counts be dismissed.

Quinonez subsequently sought a criminal complaint alleging kidnapping and indecent assault and battery. The Authority does not affirm or dispute the incident involving Dooling and Quinonez, and for the purposes of summary judgment, the Court accepts the plaintiffs version of events as true.

McConnell has argued that §10(j) is inapplicable because it was not in effect at the time of the accrual of this action. However, Stat. 1993, c. 495, §§57 and 144 clearly provide that the amendments apply to all claims upon which suit is filed sifter January 14, 1994. The present action was filed on July 11, 1994.

In a recent case, Carelton v. Framingham, 418 Mass. 623 (1994), the Supreme Judicial Court declined to resolve the applicability and meaning of §10(j), “particularly the significance of the word ‘originally,’ ” because § 10(h) provided immunity to the town. Id. at 629 n.7.