GRETA ALTER & others[1] *vs.* CITY OF NEWTON.

No. 91-P-1336.

Middlesex. April 16, 1993. - August 16, 1993.

Present: PERRETTA. KAPLAN. & DREBEN. JJ

*Negligence*, Municipality, School, Duty to prevent harm. *Municipal Corporations*, Liability for tort. *Governmental Immunity. Massachusetts Tort Claims Act.*

In an action against a municipality by a public high school student who was struck in the eye by a lacrosse ball while sitting in the schoolyard, alleging negligence on the part of the defendant in failing to take reasonable precautions to protect her from the hazard of lacrosse balls being thrown into the schoolyard during lacrosse practice on a adjacent field, the judge did not err in denying the defendant's motion for summary judgment on the ground that its failure to erect a fence or to issue warnings was within the discretionary function exception to governmental tort liability entitling it to immunity where, although the defendant's initial decision not to erect the fence due to a request by the fire department was an integral part of governmental policymaking or planning, there was no showing that the defendant's failure to warn of the danger was a decision based on policy that would allow the defendant to invoke the discretionary function exception. [144-148]

In an action against a municipality by a public high school student who was injured in the schoolyard by a lacrosse ball, the judge, in denying the defendant's motion for summary judgment, did not err in precluding the defendant from introducing evidence for the jury's consideration on the discretionary function exception to governmental tort immunity, where the discretonary function exception was a question of law for the court. [148]

In an action against a municipality by a public high school student who was struck in the eye by a lacrosse ball while sitting in the schoolyard, alleging negligence on the part of the defendant in failing to take reasonable precautions to protect her from the hazard of lacrosse balls being thrown into the schoolyard during lacrosse practice on an adjacent field, the defendant was not entitled to a directed verdict based on the discretionary function exception to governmental tort immunity, where there was evidence that the city was negligent in failing to warn the plaintiff and in failing to reposition the lacrosse net, and no governmen-

---

[1]Robert Alter and Jane Alter. (The action on behalf of Greta Alter was brought by her mother and next friend, Jane Alter.)

tal policymaking or planning grounds for there failures were apparent or presented. [148]

In an action against a municipality by a public high school student who was struck in the eye by a lacrosse ball while sitting in the schoolyard at the end of the school day waiting for her father, this court concluded that the defendant was not immune from liability because of G. L. c. 21, § 17C, the recreational use statute, where the plaintiff was not just a member of the public, but was a student making a legitimate use of the premises to whom it owed a duty of care. [149-150]

CIVIL ACTION commenced in the Superior Court Department on May 17, 1989.

The case was tried before *Gordon L. Doerfer*, J.

*Frances E. Balin*, Assistant City Solicitor (*Daniel M. Funk*, City Solicitor, with her) for the defendant.

*Michael B. Bogdanow* (*John Carroll* with him) for the plaintiffs.

DREBEN, J. On May 12, 1988, while sitting in an area of the schoolyard known as "the mall," Greta Alter, a freshman at Newton North High School, was hit in the eye by a lacrosse ball. The accident occurred at 4:00 P.M., during practice by the lacrosse team. Greta had just finished her track practice and was waiting with a classmate for her father to take her home. After the accident, the city erected a fence between "the mall" and the goal end of the lacrosse field.

Alleging negligence on the part of the city in failing to take reasonable precautions to protect her from the hazard of lacrosse balls, Greta brought this action. Her parents joined as plaintiffs seeking damages for loss of consortium. At trial there was evidence that the mall was a gathering place for students and that lacrosse balls were thrown into the walkway or the mall "fairly often," at least once every practice. An expert called by the plaintiffs described the risk to students in the mall as a definite hazard. A Superior Court jury found the city negligent and awarded Greta damages of $22,465 but found no damages for her parents for loss of consortium.

The city appeals from the judgment entered upon the verdict claiming that: (1) the judge erred in denying its motion

for summary judgment because the city's failure to erect a fence or issue warnings was within the "discretionary function" exception of G. L. c. 258, § 10(b), inserted by St. 1978, c. 512, § 15, and, therefore, the city is immune from liability[2]; (2) the judge also erred in refusing to permit the jury to decide whether the city's decisions not to erect a fence or place warnings were discretionary functions; and (3) in any event, G. L. c. 21, § 17C, the recreational use statute, also provides the city with immunity. We affirm the judgment.

1. *Discretionary function, G. L. c. 258, § 10(b).*

a. Prior to trial, the city filed a motion for summary judgment urging that it was immune from suit under G. L. c. 258, § 10(b),[3] because the "alleged negligence consisted of a failure to erect a fence, a decision which clearly constitutes discretionary decision making on the part of public officials." In support of its motion, the city filed an affidavit of Martin J. Ford, the director of support services for the city, portions of Ford's deposition, and portions of the deposition of Robert A. Hunt, a design engineer for the city. Hunt's deposition testimony recounted that the athletic complex was designed in 1976 and that, at that time, at least one member of the design review committee did not want any fences at all. "We specifically did not consider a fence there because the fire department at the time requested that the end of that field be left open as a fire lane."[4] Ford's deposition indicated that a fence costing $10,000 or more would be a capital expenditure requiring approval of the board of aldermen.[5]

---

[2]That section provides that §§ 1-8 of c. 258 shall not apply to:

"any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused."

[3]The city had previously filed a motion to dismiss which had been denied without prejudice to the filing of a motion for summary judgment.

[4]Hunt also stated that, while the fire department sought a fire lane, it did not request that there not be a fence.

[5]At the motion for summary judgment there was no evidence as to the cost of the fence in 1977 or in 1988. After the accident, a fence was

In opposition to the city's motion, the plaintiffs filed answers to interrogatories and other documents. In response to an interrogatory seeking the facts supporting the claims of negligence, the plaintiffs listed a number of failures in addition to the failure to erect a fence: a failure to reposition the net on the lacrosse field so that the goal would not face the walkway and the mall; a failure to post warnings; and a failure to bar persons from the area during lacrosse games or practice.

Because of the relationship between a school and its students, the city had a duty of care to the plaintiff to provide her with reasonably safe school premises. See *Whitney* v. *Worcester*, 373 Mass. 208, 223 (1977); *Mullins* v. *Pine Manor College*, 389 Mass. 47, 54 (1983); *Irwin* v. *Ware*, 392 Mass. 745, 756 (1984); Prosser & Keeton, Torts § 56, at 383 (5th ed. 1984). Accordingly, unless each of the failures alleged by the plaintiffs fell within the discretionary function exception, or, unless the city showed a policy reason for not choosing any means to protect its students, the city would not have been entitled to summary judgment. Cf. *Dillon* v. *Barnard*, 328 Mass 53, 55 (1951).

The most recent discussion by the Supreme Judicial Court of the discretionary function is *Harry Stoller & Co.* v. *Lowell*, 412 Mass. 139 (1992), a case involving a decision of fire fighters in fighting a fire. While recognizing that fire fighters had a choice whether to pour water on the buildings through hoses or through a sprinkler system, the court held that this type of choice did not fall within the discretionary function exception. Since "[a]lmost all conduct involves some discretion, . . . [i]f allegedly tortious conduct were to be immunized from causing liability simply because there was some element of discretion in that conduct, the discretionary function exception would go a long way toward restoring the governmental immunity that G. L. c. 258 was designed to eliminate." *Id.* at 141. The discretionary function exception is

erected by the city's public works crew without following "normal" procedures.

"far narrower, providing immunity only for discretionary conduct that involves policy making or planning." *Ibid.*

Citing *Whitney* v. *Worcester*, 373 Mass. at 216-220, as establishing guiding principles for determining the scope of the discretionary function exception, subsequently enacted in § 10(*b*), the *Stoller* court reiterated some of the considerations (set forth in the margin[6]) to be taken into account in determining whether the exception is applicable. The court also analyzed the facts in a number of previous Massachusetts cases and concluded that, even where discretionary actions were involved, unless policy considerations were implicated, the governmental unit was held liable for the negligence of its agents. Turning to specific aspects of fire fighting, the court suggested some decisions that would have "an *obvious* planning or policy basis" (emphasis supplied). 412 Mass. at 145. These would include "[t]he number and location of fire stations, the amount of equipment to purchase, the size of the fire department, the number and location of hydrants, and the quantity of the water supply . . . [and] especially the allocation of financial resources." *Ibid.* Contrasted with those decisions, or, for example, contrasted with a determination of what property to attempt to save in situations where fire fighting resources seem insufficient to save all threatened property, the court considered the conduct at issue in *Stoller* not to involve a policy or planning decision.

In the case before us, the initial decision at the time of the field's construction was, according to Hunt's deposition testimony, not to erect a fence because of the fire department's request. That 1977 decision was "an integral part of governmental policymaking or planning." *Stoller, supra* at 142. See *Patrazza* v. *Commonwealth*, 398 Mass. 464, 466-467, 469-

---

[6]"If the injury-producing conduct was an integral part of governmental policymaking or planning, if the imposition of liability might jeopardize the quality of the governmental process, or if the case could not be decided without usurping the power and responsibility of either the legislative or executive branch of government, governmental immunity would probably attach. The general rule, however, should be one of governmental tort liability." *Stoller, supra* at 142.

470 (1986) (unburied guardrails shown to be policy decision shielded by § 10[*b*]); *Sanker* v. *Orleans*, 27 Mass. App. Ct. 410, 412 (1989) (location of utility poles held to be decision within § 10[*b*]). See also the discussion of fences in *Gage* v. *Westfield*, 26 Mass. App. Ct. 681, 686 (1988), and in *Tryon* v. *Lowell*, 29 Mass. App. Ct. 720, 724 (1991), indicating that in some circumstances the failure to erect a fence is a policy decision.

The alleged negligence by the city in failing to warn of the danger does not, however, come within the exception of § 10(*b*). There was no "obvious planning or policy basis" for that failure, *Stoller*, *supra* at 145, nor has the city presented anything to suggest that the failure "was an integral part of governmental policymaking or planning," or any other consideration discussed in *Stoller* (see note 6, *supra*). See *Whitney* v. *Worcester*, 373 Mass. at 223. It is difficult to imagine the city justifying a decision not to place warning signs to high school students on economic or other policy grounds. In the absence of evidence that the city made such a decision based on policy, it may not here invoke the exception of § 10(*b*). See *Dube* v. *Pittsburgh Corning*, 870 F.2d 790, 799-800 (1st Cir. 1989).

Other Federal cases[7] also hold that in the absence of a showing that a failure to warn is a policy decision or that such a policy is obvious, the discretionary function exception does not apply. See, e.g., *Caplan* v. *United States*, 877 F.2d 1314, 1316 (6th Cir. 1989); *Boyd* v. *United States*, 881 F.2d 895, 897-898 (10th Cir. 1989); *Andrulonis* v. *United States*, 924 F.2d 1210, 1219 (2d Cir. 1991), cert. denied sub nom. *New York State Dept. of Health* v. *Andrulonis*, 112 S.Ct. 2992 (1992); *Summers* v. *United States*, 905 F.2d 1212, 1215 (9th Cir. 1990). Contrast *Myslakowski* v. *United States*, 806 F.2d 94, 97 (6th Cir. 1986), cert. denied, 480 U.S. 948 (1987), and *Zumwalt* v. *United States*, 928 F.2d 951, 955 (10th Cir. 1991), both cases where policy decisions

---

[7]Decisions under the Federal Tort Claims Act provide some guidance in deciding the scope of the § 10(*b*) exception. *Stoller*, 412 Mass. at 142-143.

supported the application of the discretionary function exception.

The reasons that the city may not rely on § 10(*b*) with respect to its failure to warn apply equally to its failure to reposition the net or to take other precautions during lacrosse practice. Since at least some of the claims of negligence were not entitled to protection under § 10(*b*), the judge did not err in denying the city's motion for summary judgment.[8]

b. Because of his ruling on the city's motion for summary judgment, the judge, at the commencement of trial, stated that he would not permit the jury to consider whether the decisions of the city were within the discretionary function. Although the city claims this was error, both Federal and State cases hold that the application of the discretionary function exception is a question of law for the court. *Hart* v. *United States*, 894 F.2d 1539, 1544 (11th Cir.), cert. denied, 498 U.S. 980 (1990). *Garcia* v. *United States*, 826 F.2d 806, 809 (9th Cir. 1987). *Peavler* v. *Commissioners of Monroe County*, 528 N.E.2d 40, 46 (Ind. 1988). *Gillam* v. *Lloyd*, 172 Mich. App. 563, 576 (1988). Accordingly, the judge did not err in precluding the city from introducing evidence for jury consideration on the discretionary function issue.[9]

c. After the city had rested its case, it again urged that it was entitled to judgment and moved for a directed verdict on the basis of § 10(*b*), as well as on other grounds. The city at no time requested that the issue of the fence be treated differently from the other claims of negligence.

The reasoning in our discussion of the city's motion for summary judgment disposes of the claim that the motion for a directed verdict should have been allowed. Since there was evidence that the city was negligent in failing to warn and in failing to reposition the lacrosse net, and no policy grounds for these failures were apparent or presented, the city was not entitled to a directed verdict based on § 10(*b*).

---

[8]The city did not seek partial summary judgment.

[9]The offer of evidence, even if it had been submitted to the judge for his, rather than the jury's, determination, related only to the fence and not the other allegations of negligence.

2. *Recreational use statute, G. L. c. 21, § 17C.* The city also urges that it is immune from liability because of G. L. c. 21, § 17C,[10] which, as inserted by St. 1972, c. 575, provides that an owner of land,[11] "who permits the public to use such land for recreational purposes without imposing a . . . fee . . . shall not be liable to any member of the public" who uses the land for such purposes for injuries sustained while on that land.

The difficulty with the city's argument is that the plaintiff was not just a member of the public, but was, as discussed earlier, a student to whom it owed a duty of care. See *Whitney* v. *Worcester*, 373 Mass. at 223; *Mullins* v. *Pine Manor College*, 389 Mass. at 54; *Irwin* v. *Ware*, 392 Mass. at 756; *Bauer* v. *Minidoka Sch. Dist. No. 331*, 116 Idaho 586, 588 (1989); Prosser & Keeton, Torts § 56, at 383. As stated in *Bauer* v. *Minidoka Sch. Dist. No. 331*, *supra* at 588-589, "if the recreational use statute were applied to injuries children suffered while on school premises as students," the special relationship of the school to its students would be substantially impaired.

That the accident occurred at the end of the school day while the plaintiff was waiting for her father does not absolve the city from liability. Hers was a legitimate use of the

---

[10]That statute provides in full:

"An owner of land who permits the public to use such land for recreational purposes without imposing a charge or fee therefor, or who leases his land for said purposes to the commonwealth or any political subdivision thereof shall not be liable to any member of the public who uses said land for the aforesaid purposes for injuries to person or property sustained by him while on said land in the absence of wilful, wanton or reckless conduct by such owner, nor shall such permission be deemed to confer upon any person so using said land the status of an invitee or licensee to whom any duty would be owed by said owner. The liability of an owner who imposes a charge or fee for the use of his land by the public for recreational purposes shall not be limited by any provision of this section."

[11]*Anderson* v. *Springfield*, 406 Mass. 632 (1990), held that the statute applies to a municipal owner.

premises within the scope of a student's traditional relationship with her school.

*Judgment affirmed.*