Inge, Garry V., J.
*201 INTRODUCTION
The plaintiff, Alexander Turk (“Turk”), on March 24, 2006, fell while lifting weights at the Westborough High School (the “School”), a public school owned and operated by the defendant, the Town of Westborough (the “Town”). Turk contends the Town was both negligent (Count I) and willfully reckless (Count II) for: (1) failing to supervise weightlifting activities; (2) failing to provide warnings about the dangers associated with weight lifting; and (3) failing to safely maintain and place floor mats in the weight room safely. The matter is currently before the court on the Town’s Motion for Summary Judgment. For the reasons set forth below, the Motion for Summary Judgment is DENIED in part and ALLOWED in part.
BACKGROUND
The undisputed facts and the disputed facts viewed in the light most favorable to Turk, as the non-moving party, are as follows. See Attorney Gen. v. Bailey, 386 Mass. 367, 371 (1982).
The School is a public school owned and operated by the Town. At all times relevant to this case, Turk was a student enrolled at the School.
In 2002, the School’s Athletic Director and a group of physical education instructors who worked for the School developed a set of safety and use protocols regarding weightlifting. These protocols were in effect in March 2006; however, some of the safety and use protocols were not followed.
Before March 2006, Turk had been trained to use the weight room properly and safely both in physical education class and as a member of the football team. During his Freshman, Sophomore, and Junior years, while in physical education class, Turk watched a video about safety, which may have included information about weightlifting. In addition, the football coaches trained Turk about how to use the weightlifting equipment correctly, specifically demonstrating the proper method for performing squats. Based on this training, Turk knew spotters were used to prevent accidents and that a spotter should be used while engaged in squatting exercises.[1]
On March 24,2006, Turk was performing squatting exercises in the School’s weight room. Turk was lifting approximately four hundred pounds. He did not have a spotter assisting him. While squatting, Turk felt his foot catch on something, causing him to fall. He did not see what his foot caught on before he fell.
At some point prior to March 2006, the School installed station mats on the weight room floor. The mats were not fixed and they were of varying thicknesses. There were gaps between the mats and places where the mats overlapped, creating an uneven floor surface. Turk knew about the gaps, but he did not attempt to move the mats to eliminate the gaps prior to beginning his squatting exercises. At the time Turk fell, there were no notices to warn students about the dangers associated with weightlifting or explaining the proper use of the weightlifting equipment.
The parties disagree as to whether the weight room was supervised at the time of Turk’s fall. The Town claims there was adult supervision of all weight room activities; while Turk states that, at the time of his fall, the weight room was unlocked and unsupervised.
DISCUSSION
In support of summary judgment, the Town first contends it is immune from liability for Turk’s negligence claim because his claim is based on its, i.e., the School’s, discretionary decisions and further, it was not the “original cause” of Turk’s injuries. Next, even if not immune, the Town argues it is entitled to summary judgment on Turk’s negligence claim because the dangers associated with weightlifting were open and obvious and additionally, Turk has failed to demonstrate that the placement of the floor mats was the proximate cause of his injuries. Finally, the Town claims summary judgment should enter in its favor on Turk’s claim for willful, wanton, and reckless conduct because, where he has failed to meet the lower threshold required for negligence, he cannot demonstrate recklessness. The court addresses each argument below.
I. Standard of Review
Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The moving party bears the burden of affirmatively showing that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991). The nonmoving party cannot defeat the well-pled motion for summary judgment by resting on its pleadings; rather, it must respond by alleging specific facts demonstrating the existence of a genuine fact. Correllas v. Viveiros, 410 Mass. 314, 317 (1991). The court views the evidence in the light most favorable to the nonmov-ing party, but does not weigh evidence, assess credibility, or find facts. Attorney Gen., 386 Mass. at 370-71.
II. The MTCA Immunity
Because Turk asserts a claim against a municipality, i.e., the Town, the Massachusetts Tort Claims Act (the “MTCA”), G.L.c. 258, §1 et seq., governs his claim.
A. The MTCA Section 10(b)
The Town contends it is immune from suit under the MTCA, § 10(b), because the decisions that Turk alleges led to his injuries, i.e., the failure to provide *202 supervision, the failure to provide warnings, and the purchase and placement of the station mats, were discretionary. In response, Turk asserts that, even if they were discretionary, these decisions do not rise to the level of policymaking and/or planning implicated by Section 10(b). The court agrees with Turk.
Pursuant to the MTCA, § 10(b), municipalities such as the Town retain immunity for:
any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused.
G.L.c. 258, § 10(b). The application of this provision requires a two-part test. See Harry Stroller & Co. v. Lowell 412 Mass. 139, 141 (1992).
The first step is to determine “whether the governmental actor had any discretion to do or not to do what the plaintiff claims caused him harm.” Id. at 141. The second step is to determine “whether the discretion that the actor has is that kind of discretion for which § 10(b) provides immunity from liability . . .” Id. If the conduct that caused the injury has a “high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning, governmental entities should remain immune from liability.” Id. at 142, citing Whitney v. Worcester, 373 Mass. 208,216-20 (1977). In determining whether the conduct involves policymaking and planning, the court considers whether “the injury-producing conduct was an integral part of governmental policymaking or planning, if the imposition of liability might jeopardize the quality of the governmental process, or if the case could not be decided without usurping the power and responsibility of either the legislative or executive branch of government...” Id.
1. Discretion
The first issue is whether the Town, i.e., the School, had discretion to: (1) operate the weight room unsupervised, (2) forgo posting warnings in the weight room about the dangers associated with weightlifting; and (3) purchase and place station mats around the equipment in the weight room. Although there are general curriculum guidelines published by the Massachusetts Department of Education regarding physical education,[2] the court has found no statute, ordinance, or regulation that either requires or prohibits a school from maintaining a weight room for use in its physical education curriculum or for use during extracurricular sporting activities. Similarly, the court has found no statute, ordinance, or regulation that governs what safety procedures should be followed or what equipment should be provided for use in a weight room, which a public school operates. The court concludes the School had discretion to maintain a weight room and to establish the safety procedures and the equipment available for use in that weight room, including the discretion to post warnings and place station mats on the weight room floor.
2. Policymaking and/or Planning
The second issue is whether the Town’s conduct, i.e., the School’s operating the weight room unsupervised, the School’s failing to post warnings about the dangers associated with weightlifting, and the School’s purchasing and placing station mats around the equipment, involved policymaking or planning. Although a school’s administrative decisions regarding the allocation of limited resources, including the decision to maintain a weight room, are considered policymaking decisions, the court concludes the School’s failure to supervise the students adequately while in the weight room, the failure to post warnings about the dangers associated with weightlifting, and the purchase and improper placement of station mats do not implicate the type of policymaking and/or planning decisions protected by Section 10(b). See Alake v. Boston, 40 Mass.App.Ct. 610, 612-13 (1996) (“While student supervision involve[s] some exercise of discretion!,] ... it does not . . . rise to the level of a ‘policy or planning’ function immunized by the [MTCA]”); Alter v. Newton, 35 Mass.App.Ct. 142, 147 (1993) (“The alleged negligence by the city in failing to warn of . . . danger does not . . . come within the exception of [s]ection 10(b)”); Tryon v. Lowell 29 Mass.App.Ct. 720 (1991) (“[M]aintenance ... or failure to maintain . . . does not entail a discretionary function . . . [and] day to day care and maintenance . . . seems at the opposite end from policy and planning . . .” (internal quotations and citations omitted)), declined to follow on other grounds by Barnett v. Lynn, 433 Mass. 662 (2001).[3] For these reasons, the Town is not entitled to immunity pursuant to Section 10(b) of the MTCA.
B. The MTCA, Section 10(j)
The Town argues it is immune from suit under the MTCA, §10(j), because it cannot be deemed to have been the “original cause” of Turk’s injuries where his allegations only support a claim based upon the failure to prevent harm. In answer, Turk contends the Town is not immune from suit because Section 10(j)’s exclusion does not apply to claims based on negligent maintenance of public property. With some limitations, the court agrees with Turk.
Pursuant to the MTCA, §10(j), municipalities such as the Town retain tort immunity for:
any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer . . .
G.L.c. 258, §10(j). This provision has been construed to mean that a municipality is immune from suit, if it is not the “original cause” of the condition or situation *203 that caused the plaintiffs injury. See Brum v. Dartmouth, 428 Mass. 684, 692 (1999). Further, as the Town points out, “original cause” means “an affirmative act (not a failure to act) by a public employer that creates the ‘condition or situation’ that results in harm inflicted by a third party.” Kent v. Commonwealth, 437 Mass. 312, 318 (2002), quoting Brum, 428 Mass. at 695. Based on this framework, the court concludes the Town is immune from suit for any claim of negligence premised on the failure to provide adequate supervision in the weight room and the failure to provide warnings about the dangers associated with weightlifting as these omissions are not affirmative acts constituting an “original cause.” The analysis, however, does not end here.
Section 10(j) specifically states “(t]his exclusion shall not apply to . . . any claim based on negligent maintenance of public property . . .” G.L.c. 258, §10(j)(3). For this reason, although the Town is immune from claims based upon either the failure to supervise the weight room adequately or the failure to warn about the dangers associated with weightlifting, the court concludes the Town is not immune from suit against Turk’s negligence claim insofar as it is premised on the Town’s, i.e., the School’s, purchase and negligent placement and/or maintenance of the station mats on the weight room floor.[4]
III. Negligent Maintenance of the Weight Room
Even if not immune, the Town argues it is entitled to summary judgment because Turk has failed to demonstrate that the placement of the station mats was the proximate cause of his injuries.[5] In response, Turk claims he has offered sufficient evidence, demonstrating that the placement of the mats caused his fall, to survive summary judgment. The court agrees with Turk. To prevail on a claim of negligent maintenance, a plaintiff must show: “(1) a legal duly owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury.” Nelson v. Massachusetts Port Auth., 55 Mass.App.Ct. 433, 435 (2002), citing Jorgensen v. Massachusetts Port Auth., 905 F.2d 515, 522 (1st Cir. 1990). Here, the parties do not appear to dispute that the School owed Turk a duty of care. There is disagreement, however, regarding causation.
In this case, Turk provides evidence, in the form of deposition testimony, that the uneven placement of the station mats along with their varying degrees of thickness caused him to fall when his foot caught on “either a small space or a difference in size.” This evidence is sufficient to survive summary judgment, especially as questions of negligence and causation are usually left to the jury. Zezuski v. Jenny Mfg. Co., 363 Mass. 324, 327 (1973); Pucci v. Amherst Rest. Enter Inc., 33 Mass.App.Ct. 779, 785 (1992), rev. denied, 414 Mass. 1103 (1993); O’Hanley v. Ninety-Nine, Inc., 12 Mass.App.Ct. 64, 68 (1981) (“[T]he question of the proximate cause of the plaintiffs injury is one for the jury”). For this reason, the Town’s Motion for Summary Judgment will be DENIED as to Count I (negligence) insofar as it asserts a claim for negligent maintenance.
IV. Willful, Wanton, & Reckless Conduct
Lastly, the Town claims it should be awarded summary judgment on Turk’s claim for willful, wanton, and reckless conduct because he has failed to meet the heightened standards applicable to this claim. In reply, Turk asserts that the Town knowingly “disregarded an unreasonable risk by deciding to install multiple station mats that were not fixed and were of unequal height." The court agrees with the Town.
Allegations of willful, wanton, and reckless conduct, i.e., allegations of gross negligence, impose a heightened burden upon the plaintiff. See Zavras v. Capeway Rovers Motorcycle Club, Inc., 44 Mass.App.Ct. 17, 21 (1997). “Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence ... It is very great negligence, or the absence of slight diligence, or the want of even scant care.” Altman v. Aronson, 231 Mass. 588, 591 (1919). Moreover, willful, wanton, and reckless conduct can be distinguished from negligence in two ways: “First, the defendant must knowingly or intentionally disregard an unreasonable risk. Second, the risk, viewed prospectively, must entail a high degree of probability that substantial harm would result to the plaintiff." Manning v. Nobile, 411 Mass. 382, 387-88 (1991) (internal citations omitted). Even viewing the evidence in the light most favorable to Turk and accepting, for purposes of summary judgment, that the Town knowingly disregarded an unreasonable risk, viewed prospectively, there is no evidence that the risk of improper placement of the station mats entailed a high degree of probability that death or serious bodily injury would result were the risk disregarded. See Sandler v. Commonwealth, 419 Mass. 334, 339-40 (1995) (finding evidence of municipality’s persistent failure to replace a manhole cover over a eight-inch drain in a tunnel on a bikeway did not warrant a finding of reckless conduct). For this reason, the Town’s Motion for Summary Judgment will be ALLOWED as to Count II (willful, wanton, and reckless conduct).
ORDER
For the reasons stated herein, it is hereby ORDERED that the Town’s Motion for Summary Judgment will be:
1. DENIED as to Count I (negligence) insofar as this count asserts a claim for negligent maintenance; and
2. ALLOWED as to Count II (willful, wanton, and reckless conduct).

Turk does not dispute that he had been taught a spotter was necessary while performing squats. He states, however, that it was his understanding a spotter was not there to assist with lifting, but to help in case of an accident.

See Massachusetts Comprehensive Health Curriculum Framework, published by the Massachusetts Department of Education, available at http://www.doe.mass.edu/frame-works/health/1999/1099.pdf (last visited on February 9, 2011).

As a final point on this issue, the court notes that a decision in this case, as to the negligence of the Town, will not usurp the power and responsibility of either the legislative or executive branches of government. See Harry Stroller & Co., 412 Mass. at 141.

The court recognizes that a failure to warn can form the basis of a claim for premises liability. Nevertheless, in the circumstances presented by this case, the court excludes this basis for liability. Turk does not argue that the Town failed to warn about a danger associated with the premises; rather, he contends the Town failed to warn about the dangers associated with weightlifting. This is distinct from the claim for negligent maintenance.

Because the court has determined that the Town is immune from suit for any negligence claim premised on the failure to warn about the dangers associated with weightlifting, the court need not address the Town’s assertion that it was not required to post warnings pertaining to weightlifting as such dangers were open and obvious.